FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA** 2018 OCT 30  PM 2: 58
**ORLANDO DIVISION**

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**MAVA HUNTSMAN,**

**Hon.**

**Plaintiff,**                                  Case No. 6:18-cv-1850-ORL-40GJK
**Demand For Jury Trial**

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY,**

**Defendant.**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff MAVA HUNTSMAN ("Plaintiff" or "HUNTSMAN"), by and through her counsel, DC Capital Law, LLP, and files this Complaint against Defendant FIRST AMERICAN TITLE INSURANCE COMPANY, ("Defendant" or "FATIC"). In support of her Complaint, Plaintiff states as follows:

## I.  PRELIMINARY STATEMENT

1.      The Plaintiff alleges that Defendant's collection practices violate both the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and The Florida Consumer Collection Practices Act ("FCCPA"), 559.55 *et seq.*, statutes enacted expressly to protect consumers from the types of harm alleged herein. Defendant violated the FDCPA by, *inter alia*, sending Plaintiff collection notices that failed to include the required disclosures regarding Plaintiff's statutorily protected rights to dispute the debt and seek verification thereof pursuant to 15 U.S.C. § 1692g.

2.     Importantly, the FDCPA and FCCPA expressly prohibit any further collection efforts while a request for validation or verification is pending. Defendant FATIC improperly deprived Plaintiff of the ability to make such a request. Defendant further violated both the FDCPA and FCCPA when it threatened to, and ultimately did, record a Claim of Lien in the public records of Orange, Florida, in an amount having no basis in law or fact. The aforementioned statutes plainly state that debt collectors may only collect amounts that arise from the debtor's obligations to the creditor, not arbitrary costs and fees imposed by the debt collector.

3.     Despite having failed to properly notify Plaintiff of her statutory rights to dispute the debt and seek validation thereof, Defendant FATIC nonetheless proceeded to improperly and impermissibly foreclose on her timeshare property interest—considered *in personam* personal property under Florida law—using an *in rem* proceeding in Osceola County, Florida, in flagrant violation of both the FDCPA at 15 U.S.C. § 1692g(b) and the FCCPA. **Please see Exhibits 1, 2, 3, and 7.**

4.     Without having provided Plaintiff with an opportunity to verify and dispute the debt, Defendant recorded a lien in the amount of $985.34 in the public records of Orange, Florida (Osceola County). The FDCPA requires not only that debtors be given the right to dispute the debt and seek verification thereof, but also, *inter alia*, that the debt collector demonstrate its authority to recover the alleged debt from the debtor in the first place. *See* 15 U.S.C. §§ 1692g(a)1-5 1692g(b). Defendant failed to properly comply with any of those provisions.

5.     Further violative collection practices committed by Defendant include, *inter alia*, sending Plaintiff written communications that:

(a)     make false, deceptive, and misleading representations that Defendants are authorized and permitted by law to record a lien against Plaintiff as

threatened by Defendant in **Exhibit 1, 2 and 3**;

(b)     attempt to collect arbitrary costs and legal fees without any basis in law or fact, as such additional costs or fees have no connection to Plaintiff's contractual obligations to the creditor, and are therefore not recoverable from Plaintiff by Defendant (please note references to "Other Costs" or "Costs of Collection" in **Exhibit 1, 2 and 3)**;

(c)     threaten adverse consequences to Plaintiff's credit history and reports if the unlawful and unsubstantiated lien amounts sought by Defendant are filed with a public record, or the unlawful foreclosure action threatened by Defendant takes place;

(d)     threaten to update public records to reflect false, unlawfully calculated debt amounts allegedly owed by Plaintiff, or to expose false and private debt information to the public and third parties in violation of 15 U.S.C. §§ 1692c(b) and 15 U.S.C. § 1692f (1), including the unlawful and unauthorized "foreclosure" costs and fees; and

(e)     fail to adhere to the requirements of 15 U.S.C. § 1692g, which mandate that debt collectors, including Defendant, must provide Plaintiff with an opportunity to dispute the alleged debt and seek verification thereof. Furthermore, 15 U.S.C. § 1692g(b) requires that any debt collector, including Defendant, must cease all collection efforts once verification is sought. In the instant case, due to the manner in which Defendant unlawfully crafted its collection notices, Plaintiff was not afforded the opportunity to seek such verification.

## II.  RELEVANT STATUTES AND CASE LAW APPLICATION

6.    The FDCPA regulates the behavior of debt collectors that seek to collect debts on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of social and financial issues, including personal bankruptcies, marital instability, loss of employment, emotional distress, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

7.    The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether a Defendant's conduct violates the FDCPA. "A debt collector's failure to provide the information required by § 1692g is actionable as a violation of § 1692e 'if the variance is one that would tend to mislead the least sophisticated consumer.'" *Leonard, 2017 WL 4979160, at \*4 (quoting Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1304 (11th Cir. 2014)).*

8.    The "least sophisticated consumer" standard assumes that the consumer "posses[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Leonard*, 2017 WL 4979160 at \*2 (alteration in original) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-94 (11th Cir. 2010) and *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)). Using this standard, the FDCPA protects "naïve consumers" while at the same time "prevent[ing] liability for bizarre or

idiosyncratic interpretations of collections notices by preserving a quotient of reasonableness." Id. (quoting *LeBlanc*, 601 F.3d at 1194.

9.      To reduce the use of unconscionable and unfair practices by debt collectors, the FDCPA at 15 U.S.C. § 1692f prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt and enumerates a non-exhaustive list of unconscionable or unfair debt collection practices that constitute *per se* violations of the statute. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited by this section are the attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f (1).

10.      "In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453. *See Goodrow v. Friedman & MacFadye*n, P.A., 788 F. Supp. 2d 464, 471 (E.D. Va. 2011) ("[A] debt collector must comply with the FDCPA while complying with a state foreclosure law."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).

11.      The Federal Trade Commission's commentary to the FDCPA, which states that § 1692a(6)(F)(i) "applies to entities such as trust departments of banks" and "escrow companies," but does not include "a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale." *See* Statements of General Policy or Interpretation — Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n Dec. 13, 1988). *Harris v. Liberty Community Mgmt., Inc.*, 702 F.3d 1298 (11th Cir. 2012).

12.     To assert a violation of the FDCPA, a Plaintiff must allege that (1) she has been the object of collection activity arising from consumer debt, (2) the Defendant(s) are debt collectors as defined by the FDCPA, and (3) the Defendant(s) have engaged in an act or omission prohibited by the FDCPA. *Salazar v. MFP, Inc.*, 847 F.Supp.2d 1329, 1331 (M.D. Fla. 2012) (internal quotations and citations omitted).

13.     Trustees pursuing foreclosure actions are debt collectors within the meaning of the FDCPA. *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 359 (4th Cir. 2016). Importantly, the FDCPA "does not include any requirement that a debt collector be engaged in an activity by which it makes a demand for payment," and thus includes trustees pursuing foreclosure actions within its purview. *Id.*

14.     A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. *Reese v. Ellis, Painter, Ratterree & Adams*, 678 F.3d 1211 (11th Cir. 2012).

15.     Here, Defendant was hired by Barefoot'n in the Keys at Old Town Condominium Association, Inc. (hereinafter the "Association"), a Florida non-profit corporation, for the sole purpose of collecting delinquent maintenance fees from timeshare owners, including Plaintiff. However, in performing such work for the Association, Defendant arbitrarily imposes various additional fees without any basis in the amount of $1100. Please see references to "Other Costs" in the amount of $250 at **Exhibit 1**, a "Foreclosure Processing Fee" of $200 at **Exhibit 2**, and "Estimated Foreclosure Costs" of $650 at **Exhibit 3**).

16.     The Florida Consumer Collection Practices Act (FCCPA), 559.55 *et seq.* is an act promulgated to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines in furtherance of protecting

consumers from unfair collection practices. Importantly, "in applying and construing" the FCCPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Florida Statutes at 559.77(5).

17.     Under the FCCPA, 559.77(1) and (2), a person who suffers injury, loss, or damage, or from whom money was collected using a method, act, or practice in violation of this act may bring an action for actual damages and for additional statutory damages of up to $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff.  In determining the Defendant's liability for any additional damages arising from a claim brought under this subsection, the court shall consider the nature of the Defendant's noncompliance with the FCCPA, the frequency and persistence of such noncompliance, and the extent to which such noncompliance was intentional.

18.     A Debt Collector means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts. Florida Statutes, Sections 559.55 (6). Defendant is a debt collector and collection agency under the FDCPA and FCCPA.

19.     "Debtor" or "consumer" means any natural person obligated or allegedly obligated to pay any debt. Florida Statutes, Sections 559.55 (2).  Plaintiff is a debtor under the FCCPA and FDCPA.

20.     In the instant case, Defendant violated numerous provisions of the FCCPA through its unlawful conduct, including, but not limited to, when it:

a.     violated 559.72 (5) by threatening to communicate private and false debt information to the public generally and did so through **Exhibits 1, 2 and 3;**

b.     violated 559.72 (9) by claiming, attempting, or threatening to enforce a debt when it knew the debt was not legitimate, and asserting the existence of some other legal right when it knew that the right does not exist, through **Exhibits 1, 2 and 3;**

c.     violated 559.72 (13) by threatening to advertise the sale of the timeshare property and make publicly available false debt amounts allegedly owed by Plaintiff as an unlawful means to expedite payment of a debt through **Exhibits 1, 2, 3, and, eventually, Exhibit 7;** and

d.     violated 559.72 (14) by threatening to communicate and publish private and false debt information to the public generally and did so through **Exhibits 1, 2, 3, and 7.**

21.     "Communicate" under both the FDCPA and FCCPA means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendant FATIC is communicating the demand for payment of a debt through its letters at **Exhibit 1 and Exhibit 2 and Exhibit 3** and through the public records showcasing liens and foreclosures at **Exhibit7.**

22.     Among the *per se* violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

> (b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, *a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.*

23.     Among the *per se* violations prohibited by the FDCPA is 15 U.S.C. § 1692f (6):

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

**(A)**     there is no present right to possession of the property claimed as collateral through an enforceable security interest;

**(B)**     there is no present intention to take possession of the property; or

**(C)**     the property is exempt by law from such dispossession or disablement.

24.     15 U.S.C. § 1692g provides:

### § 1692g. Validation of debts

**(a)     Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1) the amount of the debt;**

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, **within thirty days *after receipt* of the notice,** disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector **in writing within the thirty-day period** that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request **within the thirty-day period**, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b)     Disputed debts.** If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment,* or the name and address of the original creditor, and a

copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

25.     The validation notice may not be either "overshadowed" or contradicted by other language or material in the original or subsequent collection letters sent within 30 days after receipt of the first one. *Swanson v. Southern Oregon Credit Service, Inc.,* supra, 869 F.2d 1222 (9th Cir. 1988); *Harris v. Payco General American Credits, Inc.,* 98 C 4245, 1998 U.S. Dist. LEXIS 20153 (N.D. Ill. Dec. 9, 1998)."A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.,* 74, F.3d 30 (2d Cir. 1996).

26.     Numerous courts have recognized that the FDCPA's purpose—to eliminate abusive debt collection practices—would be frustrated and undermined if subsequent debt collectors were excused from complying with the requirements contained in section 1692g. *Wright v. Ocwen Loan Servicing, LLC*, 12-14762, 2013 WL 5532687, at 4-5 (E.D. Mich. Oct.7, 2013), See also *Lewis v. Nationstar Mortgage,* 2014 WL 1089557, at 7-10 (E.D. Mich. March 18, 2014).

27.     Section 1692g(a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector **must** obtain verification of the debt and must send the debtor a copy of the verification (emphasis added). Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. **Subsection (b)** states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. *Graziano v. Harrison, 950 F. 2d 107* (3d Cir. 1991). Critically, each of the foregoing requirements are mandatory rather than permissive; the debt collector is unequivocally obligated by the FCDPA to act in accordance with its provisions.

28.     The FDCPA's bona fide error defense at 15 U.S.C. § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of a legal requirement of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611-12 (2010). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983).

29.     Further, under mandates of the Federal Trade Commission (FTC), with "Right to Use" or "Fixed or Floating Time" purchases of timeshare condominiums, "The interest you own is legally considered personal property.  Federal Trade Commission, Consumer Information, Timeshares and Vacation Plans, *https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans*. **Please see Exhibit 4**. As previously noted at Paragraph 16, *supra*, Florida courts give great deference to FTC guidance in interpreting the FCCPA. Thus, Plaintiff's timeshare is a personal property interest rather than a real property interest.

30.     Florida's timeshare statute provides, in relevant part, that "personal property timeshare plans" shall not be subject to liens for overdue assessments, work performed, or materials provided. *See* Florida Statutes §721.16, Liens for overdue assessments; liens for labor performed on, or materials furnished to, a timeshare unit:

721.16(6)     *This section shall not apply to personal property timeshare plans.*

31.     Defendant threatened Plaintiff with filing a lien in the public records of Osceola County, Florida, and has unlawfully and impermissibly sought to foreclose on an *in personam* interest through an *in rem* proceeding in flagrant contravention of both the FDCPA and FCCPA as stated above and below. **Please see Exhibit 1, 2, 3**.

32.   At all times relevant to this complaint, Defendant is a debt collector under the FDCPA and the FCCPA collecting on timeshare and condominium association debt and is incorporated in the State of Nebraska with a Resident Agent listed as Chief Financial Officer, 200 E. Gaines St., Tallahassee, Fl., 32399.

33.   Plaintiff is a resident of the City of South Jordan, State of Utah. The personal property that is the subject of this lawsuit is in Osceola County, State of Florida. **Please see Exhibits 1, 2, and 3**.

### III. JURISDICTION & VENUE

34.   Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

35.   Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. The factual basis of the FCCPA claim is the same as the factual basis of the FCCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). Additionally, as previously noted at Paragraph 16, *supra*, Florida courts give great deference to FTC guidance and the interpretations of federal courts analyzing FDCPA matters when considering FCCPA cases.

36.   Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

37.   Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the debt collection under the FDCPA giving rise to Plaintiff's claims occurred within this federal judicial district at the time this action is commenced.

### IV. FACTS CONCERNING PLAINTIFF

38.   On or about December 16, 2004, Plaintiff allegedly incurred a financial obligation

on the purchase of a timeshare condominium involving the SELLER/DEVELOPER, BAREFOOT'N DEVELOPMENT COMPANY LLC ("Developer"). **Please see Exhibit 4**. Plaintiff received a special warranty deed transferring property from Developer to Plaintiff in Osceola County, Florida. **Please see Exhibit 5**.

39.    The special warranty deed at **Exhibit 5** states that the Plaintiff agrees to abide by the Rules of the Declaration of Condominium of Barefoot'n in the Keys at Old Town, A Condominium, Section One (the "Declaration") as shown here:

This conveyance is subject to and by accepting this Warranty Deed the Grantee does hereby agree to assume the following:

1.    Taxes for the current year and subsequent years;
2.    Conditions, restrictions, limitations, reservations, easements, and other matters of record;
3.    Declaration of Condominium of Barefoot'n in the Keys at Old Town, A Condominium, Section One, and all Exhibits attached thereto, and any supplements or amendments hereafter filed.
4.    Declaration of Covenants, Conditions and Restrictions and Grant of Easements, together with all Exhibits thereto and all amendments and supplements filed thereafter.

40.    The Declaration referred to in the special warranty deed, however, reveals the deed to be invalid and incapable of transferring any real property interest to the Plaintiff. **Exhibit 6.**

41.    The Declaration at **Exhibit 6** is shows that the property "ownership" granted to Plaintiff is categorized as either a "Fixed Unit Week" or "Flexible Unit Week." In the instant case, Plaintiff purchased a "Flex Unit Week" rather than a Fixed Unit Week. Please see **Exhibit 5** and **Exhibit 6 at Page 46**.

42.    According to the Declaration, Flexible Unit Weeks are timeshare ownership interests that are "subject to the Flexible Use Plan" and referenced in the deed "Flex Unit Weeks." **Please see Exhibit 6 at Page 3**. Plaintiff's deed states that she purchased a Flex Unit Week. **Please see Exhibit 5**.

43.    Also according to the Declaration, which was incorporated into the special warranty deed as discussed in Paragraph 38, *supra*, the "Flexible Unit Week Plan" expressly deprives Flex Week Unit owners, including Plaintiff, of any real ownership interest.

-13-

44. The Declaration goes so far as to expressly state that Flex Unit Week owners, including Plaintiff, "shall have no right whatsoever to occupy a particular unit at any time," as shown here:

> Regardless of the Unit Week provided to an Owner pursuant to the conveyance of a Timeshare Interest to such Owner, such Owner shall have no right whatsoever to occupy a particular unit at any time, except pursuant to a reservation properly made pursuant to the rules and regulations, reservation system and the Plan. Such reservations, and the other rights associated with Flexible Unit Weeks shall be in accordance with the provisions of the Declaration. including but not limited to this Article thereof.

45. In the "Flexible Unit Week Plan" of the Declaration, the "Owner" receives no actual or possessory property rights or interests other than the ability to request reservations in a pool of non-assigned or owned "Flex Unit Weeks" on a *"first-come, first-serve"* (emphasis added) basis, thereby completely frustrating the purpose of having purchased a timeshare interest, which would ostensibly entail the right to occupy the purchased unit at a particular time, as well as the right to exclude others from use during that time.

46. Instead, as shown below, the "first-come, first-serve" scheme stated in the declaration can expressly result in the forfeiture of an owner's occupancy rights without any refunds, excuse from payment of maintenance fees, or alternative compensation of any kind:

> The Flexible Unit Week Plan shall be subject to a "first-come, first-serve" basis for honoring reservation requests described in the rules and regulations and in the Declaration subject. also, to the Similar Unit Limitation. Such Owners who do not make reservations pursuant to the rules and regulations and reservation system will be obligated to accept an assignment of whatever remaining Flexible Unit Weeks are available. If the available Unit Week is not convenient to the Owner's plan or schedule, or the reserved Unit Week is not used or exchanged, the Owner may lose occupancy rights of his or her, Unit or other accommodation obtained by exchange for that year. In such event, neither the Developer, the Management Firm nor the Association is obligated to make alternative arrangements or to excuse payment of appropriate maintenance fees or to refund any of the Owner's payments.

**Please see Exhibit 6**.

47. The Federal Trade Commission (FTC) differentiates between Deeded Timeshare Ownership, which Plaintiff does not have, and a "Right to Use" Vacation Interval Option, which

Plaintiff purchased from Developer.  As previously noted at Paragraph 16, *supra*, Florida courts give great deference to FTC guidance in interpreting the FCCPA. Thus, the following FTC guidance, accessible at *https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans,* is illustrative:

> **Deeded Timeshare Ownership.** In a timeshare, you either own your vacation unit for the rest of your life, for the number of years spelled out in your purchase contract, or until you sell it. Your interest is legally considered real property. You buy the right to use a specific unit at a specific time every year, and you may rent, sell, exchange, or bequeath your specific timeshare unit. You and the other timeshare owners collectively own the resort property.
>
> **"Right to Use" Vacation Interval Option.** In this option, a developer owns the resort, which is made up of condominiums or units. Each condo or unit is divided into "intervals" — either by weeks or the equivalent in points. You purchase the right to use an interval at the resort for a specific number of years — typically between 10 and 50 years. The interest you own is legally considered personal property. The specific unit you use at the resort may not be the same each year. In addition to the price for the right to use an interval, you pay an annual maintenance fee that is likely to increase each year.
>
> Within the "right to use" option, several plans can affect your ability to use a unit:
>
> > **Fixed or Floating Time.** In a fixed time option, you buy the unit for use during a specific week of the year. In a floating time option, you use the unit within a certain season of the year, reserving the time you want in advance; ***confirmation typically is provided on a first-come, first-served basis***. (emphasis added)

**Please see Exhibit 4.**

48.     Pursuant to Florida timeshare law, non-judicial foreclosures can only be pursued an *in rem* proceeding—a proceeding brought against a real property interest—with a notice of intent to lien and then foreclose allowed before a judgment or decision is entered. Florida Statutes 721.01, *et seq.*

49.     Here as the Declaration states at **Exhibit 6**, Plaintiff's property is personal, and she has no ownership interest or exclusive right to use or possess anything besides the ability to request a reservation on a "first-come, first-serve" basis that is subject to availability and could even result in the forfeiture of all occupancy rights for a particular year. The non-exclusive "flex use" nature of the property or timeshare can only be "taken" from her *in personam*—as personal property— and that would require a judgement be entered prior to a lien predicated on that judgement being filed.

50.     Under Section Florida Statutes 721.16(6), Plaintiff's personal property interest is not subject to foreclosure as real property, a fact already known to Defendant when it unlawfully threatened Plaintiff with the correspondence and proceedings shown in **Exhibit 1** and later pursued at **Exhibit 2 and Exhibit 3**.

51.     When the obligation on the Association/Maintenance fees owed on the property fell into default, on or about June 5, 2018 the Defendant sent a letter to Plaintiff stating that it was from First American Title Insurance Company in the letterhead. **Please see Exhibit 1**.

52.     Included with the letter were documents written by either Diamond Resorts International or Diamond Resorts Management, Inc. that stated "This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 30 days after receipt of this letter, unless you pay in full the amounts set forth below," which amounts are excerpted here:

**Maintenance due   (01/01/2018-present)      $ 985.34**

**Late fee, if applicable     $ 0.00**

**Interest through   (01/01/2018-present) *   $ 0.00**

**Certified mail charges:     $ 0.00**

**Other Costs     $ 250.00**

**TOTAL OUTSTANDING     $ 985.34, plus Other Costs shown above**

**\*Interest accrues at the rate of zero percent per annum.**

<u>**Please see Exhibit 1**</u>.

53.    The letter also advised Plaintiff that it was from a debt collector, but failed to alert

Plaintiff to any right to dispute or seek validation of the debt, even as Defendant attempted to shake

Plaintiff down for "other costs" not arising from any contractual obligations:

> **Note: The amount of maintenance fees due within thirty (30) days of the receipt of this letter may differ from the amount that will be secured by the Claim of Lien.**
>
> **NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.  NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY OF THE ABOVE STATED AMOUNTS MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.**

<u>**Please see Exhibit 1**</u>.

54.    The letters at <u>**Exhibits 1, 2 and 3**</u> were from the Defendant in its capacity as Trustee

in foreclosing upon Plaintiff's interest and seeking payment on a defaulted debt, and therefore fall

within the purview of the FDCPA and FCCPA. Each letter sought payments.

55.    On or about July 16, 2018, Defendant sent Plaintiff a Notice of Default and Intent

to Foreclose, advising her that a Claim of Lien was recorded "in the Public Records of ***Orange***,

Florida, thereby perfecting the lien of Assessments, Fees, and Taxes pursuant to the Declaration

and sections 721.16 and 192.037 Florida Statutes." The letter had an Attachment (Schedule 1) showing the Default Amount of $985.34 was recorded on July 12, 2018 and did not include "foreclosure processing fees." **Please see Exhibit 2**.

56.   The Letter at **Exhibit 2** was also from Defendant's "Vacation Ownership Services Division" and sought payment of the amount in default along with a "foreclosure processing fee of $200, which amount will increase as the foreclosure proceeding progresses." The amount in default of $985.34 included the $250 "Other Costs" Defendant sought in its first letter to Plaintiff of June 6, 2018 at **Exhibit 1**. None of these arbitrary, unsubstantiated costs are subject to collection from Plaintiff.

57.   Further, Defendant's letter at **Exhibit 2** stated it was from a Debt Collector collecting a debt using the same boilerplate notification language as the letter at **Exhibit 1**:

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY ONE OR MORE OF THE LIENS DESCRIBED ON EXHIBIT 'A' HERETO MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

The Association has appointed the following Trustee to conduct the trustee's sale:

First American Title Insurance Company, a Nebraska corporation, duly registered in the state of Florida as an Insurance Company, 400 S. Rampart Blvd, Suite 290, Las Vegas, NV, 89145, (866) 505-9107

58.   Once again, the letter failed to include any reference to Plaintiff's right to dispute and verify the debt as required by the FDCPA at 15 U.S.C. § 1692g.

59.   Further, after Defendant   violated the Plaintiff's rights under the FDCPA, specifically her rights to dispute and verify the debt, and to be spared any further collection efforts unless and until the debt was verified,  Defendant continued collection efforts on the debt including subsequent demands for payment and the unlawful foreclosure against a personal property interest

in violation of the FDCPA, FCCPA, and in flagrant contravention to FTC guidance. Specifically, the FDCPA states at 15 U.S.C. § 1692g(b) as follows:

**DISPUTED DEBTS**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, ***the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

60.     Defendant's failure to include the mandatory dispute and verification notice prevented Plaintiff from meaningfully advocating for herself or otherwise disputing or seeking verification of the debt, essentially opening a loophole through which Defendant felt it could continue collection efforts with impunity. Indeed, Defendant felt it did not have to "***cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***," under 15 U.S.C. § 1692g(b) if there was no pending dispute or request for verification (emphasis added). Essentially, Defendant circumvented Plaintiff's right to be free from continued unfair collection practices by failing to even afford her the opportunity to dispute the debt in the first place.

61.     The lack of a consumer dispute or demand for verification allows a debt collector to continue with its collection efforts unfettered and charge and pursue any payment amounts it wants.

62.     Defendant failed to give Plaintiff an opportunity to dispute the debt, but Defendant in fact proceeded to record a lien in the public records and improperly foreclose on Plaintiff's personal property interest.

63.     Indeed, Defendant caused a lien in the defaulted amount of $985.34 to be recorded

in the public records of Orange, Florida (Osceola County) without giving Plaintiff the statutorily guaranteed rights to dispute and seek verification of the debt, or Defendant's authority to pursue the same, under 15 U.S.C. §§ 1692g(a)1-5.

64. Nonetheless, Defendant FATIC continued its unlawful and improper collection efforts and even went so far as to set a date for the timeshare interest to be sold in a letter dated September 5, 2018. **Please see Exhibit 3**. The letter again warned that a Claim of Lien was recorded "in the Public Records of *Orange*, Florida, thereby perfecting the lien of Assessments, Fees, and Taxes pursuant to the Declaration and sections 721.16 and 192.037 Florida Statutes."

65. This time at **Exhibit 3**, Defendant sought "estimated foreclosure costs in the amount of $650.00 and must be delivered by cash or certified funds to the Trustee." Again, Defendant FATIC plainly stated that the communication was an attempt to collect a debt, but failed to include all of the notices required by the FDCPA:

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY ONE OR MORE OF THE LIENS DESCRIBED ON SCHEDULE "1" HERETO MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

66. The Defendant sought payments in all three letters attached hereto, including "Other Costs" in the amount of $250 on June 5, 2018, at **Exhibit 1**, a "Foreclosure Processing Fee" in the amount of $200 at **Exhibit 2**, and "Estimated Foreclosure Costs" in the amount of $650 at **Exhibit 3** along with the amount owed to the Association.

67. The Default amount of $985.34 was placed on the public record with Osceola County, improperly indicating that Plaintiff owed a debt, despite her having had no opportunity to dispute the same as required by law. **Please see Exhibit 7**. This false debt attributed to Plaintiff by

Defendant was exposed in the public record for all to see, in violation of the FDCPA at §1692c(b).

68.   Under Florida Statutes 721.15 (3), the managing entity or Association seeking to foreclose on a Timeshare debt must notify the debtor, at least 60 days prior to turning the matter over to a collection agency, that the purchaser may be liable for the fees of the collection agency and that a lien may result therein:

> (3)   Delinquent assessments may bear interest at the highest rate permitted by law or at some lesser rate established by the managing entity. In addition to such interest, the managing entity may charge an administrative late fee in an amount not to exceed $25 for each delinquent assessment. Any costs of collection, including reasonable collection agency fees and reasonable attorney's fees, incurred in the collection of a delinquent assessment shall be paid by the purchaser and shall be secured by a lien in favor of the managing entity upon the timeshare interest with respect to which the delinquent assessment has been incurred; however, in the event that a managing entity turns the matter over to a collection agency, the managing entity must advise the purchaser at least 60 days prior to turning the matter over to the collection agency that the purchaser may be liable for the fees of the collection agency and that a lien may result therefrom.

69.   Although the various letters and notices of intent to file liens and foreclose under the Florida Timeshare statute were sent to Plaintiff, Defendants did not notify Plaintiff more than 60 days prior to the first letter Plaintiff received on June 5, 2018, that she would liable in any way for collection agency fees or costs.

70.   Defendant FATIC was, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by 15 U.S.C. § 1692a (6), as stated in its letters at **Exhibits 1, 2, and 3.**

71.   Defendant is, at all times relevant to this complaint, a "collection agency" as that term is defined by Florida Statutes, Sections 559.55 (6).

72.   Defendant is not a "creditor" as defined by 15 U.S.C. § 1692a (4).

73.   Defendant's collection activities were central to its role as Trustee in the instant matter and were not incidental to any other responsibilities. Defendant was hired for the sole

purpose of collecting money and pursuing foreclosure actions, both of which fall squarely within the purview of the FDCPA and FCCPA

74.    Defendant's letters, attached hereto as **Exhibits 1, 2, and 3**, are "communications" as defined by the FDCPA and FCCPA. The alleged debt at issue arose out of a transaction in which the money, property, insurance, or services are the subject of the transaction that are primarily for personal, family, or household purposes.

75.    Defendant is exposing Plaintiff's private financial information to third-parties and the public in general in violation of 15 U.S.C. §1692c(b), including an alleged debt that includes arbitrary, unauthorized, unsubstantiated amounts that Defendant claims are owed despite having clearly deprived Plaintiff of her rights to dispute and verify the same under the FDCPA.

76.    Pursuant to 15 U.S.C.§ 1692n, the FDCPA does not preempt state laws unless and only to the extent "those laws are inconsistent with any provisions of this subchapter."

> **§ 816.  Relation to State laws [15 USC 1692n]**
> This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, *a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.*

77.    It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 119 (2d Cir. 1998). "A debt collector must comply with the FDCPA while complying with a state foreclosure law." *Id.* And, as initially discussed at Paragraph 16, *supra*, "in applying and construing" the state debt collection law applicable in this case, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal

courts relating to the federal Fair Debt Collection Practices Act." Florida Statutes at 559.77(5).

78.   The Florida Timeshare Statute does not expressly afford any remedies to Plaintiff for the damage done to her public reputation through Defendant's unlawful and improper collection efforts and resulting violations of state and federal law.

79.   Plaintiff has suffered an injury in fact and still faces, or has been subject to, damage to her financial and public reputation, recording costs, and increased attorney fees as a result of Defendant's threats and demand for payment shown in **Exhibit 1, Exhibit 2 and Exhibit 3,** and did suffer such injuries stated here and in Paragraphs 2, 3, and 37 through Paragraph 70 as stated above because of the Defendant's unlawful and improper debt collection activities, including Defendant's failure to notify Plaintiff of her rights to dispute and verify the debt as well as unlawfully proceeding to foreclose upon personal property in violation of the FDCPA and FCCPA.

## V. FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

80.   Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein

81.   Defendant violated the FDCPA. Defendant's violation, with respect to their written communications in the form attached as **Exhibits 1, 2 and 3** include, but are not limited to, the following:

a.   Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

b.   Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A) in **Exhibits 1, 2, and 3;**

c.      Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B);

d.      Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e (10);

e.      Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f (1) by seeking unlawful, non-judicial foreclosure fees and costs, unauthorized by contract or state law, without providing notice of Plaintiff's right to dispute and verify the debt as required by 15 U.S.C. § 1692g(a) (1-5);

f.      Threatening to record false debts and expose private information to third parties and the public in general in violation of 15 U.S.C. §1692c(b) through **Exhibits 1, 2, 3 and 7**;

g.      Threatening and pursuing foreclosure on property, and demanding that Plaintiff pay arbitrary, unsubstantiated additional extra costs and fees associated therewith in violation of 15 U.S.C. § 1692f (6); and

h.      Pursuing debt collection in violation of 15 U.S.C. § 1692g after having deprived Plaintiff of her right to seek verification and dispute the debt, thus entirely depriving her of her rights to have cease and desist from making further collection efforts pursuant to 15 U.S.C. § 1692g(b).

## VI.  SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

82.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

83.    Defendant violated Florida Statutes 559.72(97), 559.72(13), 559.72(14), and 559.72(5) as evidenced by **Exhibits 1, 2, 3, and 7,** including that attempt to collect recording costs,

"Other Costs" and foreclosure fees, without any justifiable basis, and relating to a foreclosure and lien that are not permitted by the Florida Timeshare Statute and does not arise from any contractual obligation; indeed, the Declaration attached hereto at **Exhibit 6** plainly describes an ownership interest that is considered personal property, not real property, under Florida law.

## VII. PRAYER FOR RELIEF

84.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor as follows:

A.   **For the FIRST CAUSE OF ACTION:**

(i)   An award of the maximum statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(ii)   An award of actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1);

(iii)   For declaratory relief, pursuant to 28 U.S.C. §§ 2201, 2202 adjudging that Defendant's letters, which are attached hereto as **Exhibit 1, 2 and 3**, and out of which parts of Plaintiff's Complaint arise, violate the FDCPA;

(iv)   Damages for unlawful threats to the Plaintiff's credit report, and the associated reputational and emotional harm arising therefrom;

(v)   Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(vi)   For such other and further relief as may be just and proper.

B.   **For the SECOND CAUSE OF ACTION:**

a) Awarding Plaintiff actual and statutory damages;

b) Awarding Plaintiff additional statutory damages pecuniary or otherwise beyond statutory and actual;

c) Awarding Plaintiff such equitable relief as the Court deems necessary or proper;

d) Awarding Plaintiff counsel reasonable attorneys' fees and costs incurred in this action;

e) Awarding Plaintiff pre-judgment and post judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

Respectfully submitted this 29th day of October 2018.

*/s/ Brian P. Parker*_____
Brian P. Parker
**DC CAPITAL LAW, LLP.**
Florida Bar No. 0980668
700 12th Street NW Ste. 700
Washington, D.C. 20005
bparker@dccapitallaw.com
202-793-4433
*Attorney for Plaintiff Huntsman*